IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| RONALD DARDEN, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 5:99-cv-2919-VEH-TMP |
| ) | |
| WARDEN RALPH HOOKS, ) | |
| ASSISTANT WARDEN DAVID WISE, ) | |
| DR. EMILE KHOURI, ) | |
| NURSE HARRIS DOBBS, NURSE RIGGS, ) | |
| DR. HAMMACK, and LARRY LINTEN, ) | |
| ) | |
| Defendants ) | |

MEMORANDUM OPINION

This action is before the court on the motions for summary judgment filed by the various defendants seeking dismissal of the plaintiff's claim that they violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to provide him with medical treatment for a hepatitis B infection. Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 on November 1, 1999, asserting that, although he had been diagnosed as suffering from a hepatitis B infection, the defendants refused to provide treatment with a medicine called 3TC (epivir) because of its cost. Named as defendants in the original complaint were Ralph Hooks and David Wise, the warden and assistant warden, respectively, at the Limestone Correctional Facility ("LCF"), where plaintiff was housed; and Dr. Emile Khouri and Nurse Harris Dobbs, a physician and nurse employed by the Alabama Department of Corrections' medical contractor, Correctional Medical Services, Inc. ("CMS"), to provide medical services to inmates at LCF. Plaintiff subsequently amended the complaint on December 14, 1999, to add as defendants Nurse Riggs, Dr. Hammack (a medical

advisor to CMS), and Larry Linten, identified by the plaintiff as the Regional Director for CMS over LCF. By order of September 24, 2001, a magistrate judge of this court requested a special report from defendants Hooks, Wise, Khouri, and Dobbs. Dr. Khouri and Nurse Dobbs filed a special report on November 2, 2001, and Warden Hooks and Assistant Warden Wise filed their special report on November 16, 2001. After the court notified the parties that the special reports would be treated as motions for summary judgment, plaintiff responded to them on December 7, 2001.

Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

Facts for Summary Judgment Purposes

For purposes of resolving the defendants' motions for summary judgment, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the non-moving plaintiff.

Since the mid- to late-1990s plaintiff has been incarcerated in the HIV unit at LCF. He first tested positive for HIV as early as 1990. During 1999, medical services were being provided to LCF inmates by CMS under a contract with the Alabama Department of Corrections ("ADOC"). Defendants Dr. Khouri and Nurse Dobbs were employed by CMS to provide medical services to LCF inmates, including those in the HIV unit. Another physician employed by CMS and working at LCF was Dr. Ben Moore, who is not named as a defendant in this action.

On January 5, 1999, plaintiff tested positive for hepatitis B antibodies, but negative for hepatitis B antigen. Dr. Moore received these test results on January 7, 1999, and noted that the

antibody reading of 5.3 correlated to "borderline immunity" for hepatitis B. Dr. Moore received additional results from the test on January 14, 1999, indicating a "positive" test for "Hepatitis B core Ab [antibodies]. As an interpretive note, the testing laboratory wrote, "A positive result for this test by itself does not indicate acute phase of Hepatitis B infection." In response to this positive test result, Dr. Moore wrote, "(not for acute, Previous exposure 'B')." He also noted, "no concern [with] acute phase of Hepatitis B." Because the test was barely positive ("a low titer") and because the test was negative for hepatitis B antigen, the testing laboratory recommended a follow-up test.

Follow-up testing was performed on February 10, 1999. These results were received by Dr. Moore on February 15, 1999, showing a positive result for hepatitis B antibodies, but a negative result for antigen. The hepatitis B surface antibodies measured 10.0 in this test, which Dr. Moore interpreted as "immunity to [hepatitis] B." Based on these test results, Dr. Moore concluded that, although plaintiff has been exposed to hepatitis B, causing the creating of antibodies, the negative finding for hepatitis B antigen meant that plaintiff was not suffering from an acute phase of the disease. Medical protocol at the time called for such a patient to be monitored, with testing every six to twelve months, but no treatment was required.[1] These same tests again confirmed that plaintiff was HIV positive.

---

[1] Indeed, current medical protocol calls for no treatment. In a recent research paper attempting to set forth a treatment algorithm for chronic hepatitis B, it was determined that a negative antigen test, coupled with normal ALT (alanine aminotransferase), suggests no treatment, but monitoring with additional tests every six to twelve months. See Table 7, E.B. Keeffe and others, "A Treatment Algorithm for the Management of Chronic Hepatitis B Virus Infection in the United States." Clinical Gastroenterology and Hepatology, 2:87-106 (2004), found online at www.hivandhepatitis.com/hep_b/news/2004/020604_a.html. Plaintiff's ALT was normal in the blood tests conducted on January 5, 1999.

In September of 1999, plaintiff was seen by Dr. Khouri. On September 22, 1999, Dr. Khouri recorded the following in a note concerning an appointment with plaintiff:

> Got into discussion re enzymes of liver, Hepatitis profile, etc. etc. & his interpretation of results & inflammation of liver. "Says Dr. Rampella told me active hepatitis & Dr. Moore says "like cancer." [Illegible] attitude. Re quoting re "more tests for hepatitis," re "are you saying no immunization," "Are you saying Borderline 10 does not need further testing" — "what does Borderline 10 mean" etc. etc. etc. "Are you saying enzymes OK." [All as in original].

During the examination of September 22, 1999, Dr. Khouri found no signs of liver problems and nothing out of the ordinary about the plaintiff's skin or abdomen.

Dr. Khouri next saw the plaintiff on November 22, 1999, at which time the plaintiff refused any antiviral medication to treat his HIV. Dr. Khouri wrote in part:

> Discussed VL [viral load] and CD4. Does not want antiviral. Discussed lab of 11-4-99 item by item & he "agrees."
> * * *
> Re refusal for antiviral: looong discussion re consequences of refusal → AIDS & its complications.
> Wants to discuss causes of false HIV tests, etc. etc. [All as in original].

Since that time, plaintiff has refused all lab work, contending that he has hepatitis B, not HIV, and that the defendants are refusing to treat his hepatitis B with 3TC (epivir) because it is too costly.

## Discussion

### I. Motions for Summary Judgment

As mentioned above, the essence of plaintiff's claim is that he has hepatitis B, not HIV, and that the defendants are violating his Eighth Amendment right to be free from cruel and unusual punishment by failing to adequately treat his disease. Hepatitis B has been described this way:

> Hepatitis B is the most common serious liver infection in the world, and according to the World Health Organization (WHO), it is 100 times more infectious than HIV. The virus is transmitted through direct contact with blood and bodily fluids that contain blood. The hepatitis B virus (HBV) targets the liver and eventually causes scarring of the liver (also known as cirrhosis), liver failure or cancer of the liver, and even death. Most people who become infected with hepatitis B completely recover from the virus. However, some people develop a chronic condition that requires treatment to prevent further damage to the liver.

See Epivir-HBV website, sponsored by GlaxoSmithKline, www.hepatitisbhelp.com/section4-3.html. Plaintiff claims that blood tests confirm that he has chronic hepatitis B and that he should be treated with epivir.

To establish a claim for constitutionally inadequate medical care, a prisoner must establish deliberate indifference to his serious medical needs. In Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), the Supreme Court concluded that deliberate indifference to a prisoner's serious medical needs could constitute a violation of the Eighth Amendment right. The Court held that it is only "deliberate indifference to serious medical needs of prisoners" will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment. Id. "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991), quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. Bass v. Sullivan, 550 F.2d 229 (5th Cir.), cert. denied, 434 U.S. 864 (1977). A mere difference of opinion alone between an inmate and the institution's medical staff, as to treatment and diagnosis, will not

give rise to a cause of action under the Eighth Amendment. Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976); see also Estelle v. Gamble, 429 U.S. at 106-08.

In Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986), the Eleventh Circuit held that an inmate's dissatisfaction with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference. The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions. Barfield v. Brierton, 883 F.2d 923, 938 (11th Cir. 1989). Two components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989). Clearly, "not every injury or illness invokes the constitutional protection, only those that are 'serious' have that effect." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3rd Cir. 1976). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 8 (1992). In Estelle, the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," producing "physical 'torture or a lingering death,'" to "less serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." Estelle, 429 U.S. at 103. A "serious" medical need has been defined as "one that has either been diagnosed by a physician as mandating medical treatment or one that is so obvious that even a lay person would recognize the need for a doctor's attention."

Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977).  See also Page v. Sharpe, 487 F.2d 567, 569 (1st Cir. 1973).  It is the necessity and not the desirability of medical treatment sought which is important to the determination of whether medical officials have exhibited deliberate indifference.  Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981).

In this case, the focus of the plaintiff's claim is the alleged failure of Dr. Khouri and Nurse Dobbs to treat plaintiff's serious medical illness, hepatitis B.  In fact, the evidence indicates that plaintiff did not suffer from an acute case of hepatitis B in 1999, and that a positive test for hepatitis B antibodies alone does not warrant either a diagnosis of active disease or treatment for it.  The record clearly shows without dispute that Dr. Moore concluded in February, 1999, that no treatment was necessary.  In this sense, plaintiff did not have a "serious" medical need.  Although it is true that hepatitis B is a serious disease that may require treatment under certain circumstances, it appears to be beyond dispute that plaintiff's positive antibody test but negative antigen test indicated no active disease necessitating treatment with epivir or any other drug.  Indeed, plaintiff's score of 10.0 on the antibodies test suggested to Dr. Moore that plaintiff was immune to hepatitis B.  This is consistent with the fact that most people exposed to hepatitis B recover from it without any treatment.  Such exposure prompts the body to develop antibodies to combat the virus, which remain even after the virus has been eradicated.  In plaintiff's case, the independent laboratory that performed the tests, Dr. Moore, and Dr. Khouri all concluded that plaintiff had no active case of hepatitis B and that he required no treatment for a disease he did not have.

In November, 1999, plaintiff refused to cooperate with further monitoring of his health because the medical professionals at LCF had continued to diagnose him as having HIV, not

9

hepatitis B. At that time, he refused further blood tests and antiviral therapies, and there is no evidence or suggestion in the record that this has changed.

In any event, this case presents nothing but a disagreement between the plaintiff and medical professions about his health situation. That disagreement does not establish deliberate indifference on the part of Dr. Khouri or Nurse Dobbs. Certainly, if the physician and nurse principally responsible for plaintiff's medical treatment have not been deliberately indifferent to his needs, neither can it be said that Warden Hooks or Assistant Warden Wise have been deliberately indifferent. The corrections staff necessarily must rely on the medical staff in such matters as diagnosis and treatment or medical conditions. Consequently, the motions for summary judgment filed by Dr. Khouri, Nurse Dobbs, Warden Hooks, and Assistant Warden Wise are due to be granted, and the claims against them dismissed with prejudice.

    II.  <u>Remaining Defendants</u>

Plaintiff joined three defendants by amendment on December 14, 1999: Nurse Riggs, Dr. Hammack, and Larry Linten. He alleges that Nurse Riggs intentionally infected him with the HIV virus in January, 1999, because he did not have HIV prior to that date. He alleges that Dr. Hammack and Mr. Linten were aware of his hepatitis B and that in their capacities as medical advisor to CMS and Regional Director of CMS, respectively, they are responsible for Dr. Khouri's and Nurse Dobbs' failure to treat his disease. These claims are due to be dismissed as frivolous.

Under the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, this court is required to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant who is immune from such relief. While the former 28 U.S.C. § 1915(d) permitted the court to dismiss claims *sua sponte* only if the court found them frivolous or malicious, the new § 1915A directs the court, in effect, to make and rule on its own motion to dismiss the complaint prior to service. In order to protect a *pro se* prisoner's right of access to the courts, however, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed 2d 652 (1972); Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984); Watson v. Ault, 525 F.2d 886, 891 (5th Cir. 1976).

The Supreme Court has stated that, under 28 U.S.C. § 1915(d), judges are accorded "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct 1827, 104 L. Ed. 2d 338 (1989); see also Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992). Further, under Denton v. Hernandez, courts are authorized to dismiss claims that are clearly fanciful or delusional. Plaintiff's allegations against defendants Riggs, Hammack, and Linten fall into either or both of these categories, and therefore are due to be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b).

First, plaintiff's claim that Nurse Riggs intentionally infected him with HIV is clearly fanciful or delusional. Even the evidence attached to plaintiff's filings, including the amended complaint (Doc. 15), shows that plaintiff was seropositive for HIV are early as 1994, long before he contends Nurse Riggs feloniously infected him. The contention that Nurse Riggs intentionally infected him

11

is refuted by plaintiff's own evidence, and is nothing more than delusional claptrap. Because the claim he attempts to plead against Nurse Riggs is legally frivolous, it is due to be dismissed.

Likewise, plaintiff's claim that Dr. Hammack and Mr. Linten, both in some supervisory role, are liable for failing adequately to treat his alleged hepatitis B is legally baseless. Again, the evidence attached to plaintiff's own pleadings show that it was Dr. Moore and Dr. Khouri, not Dr. Hammack or Mr. Linten, who made the decisions relating to treatment of his disease. Merely because Dr. Hammack was a medical advisor to CMS and Mr. Linten was a regional director does not mean that either personally participated in or was involved with these treatment decisions. Certainly, they are not responsible merely because of their supervisory roles. See Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Without some allegation of a causal link between some act or omission by these defendants and the violation of plaintiff's constitutional rights, they cannot be held personally liable. Further, because plaintiff hinges their liability on their roles as supervisors over Dr. Khouri and Nurse Dobbs, the fact that neither Dr. Khouri nor Nurse Dobbs was deliberately indifferent to plaintiff's condition necessarily means that neither Dr. Hammack nor Mr. Linten were. The claims against them are clearly baseless and due to be dismissed.

<u>Conclusion</u>

By separate order the court will grant the motions for summary judgment by defendants Hooks, Wise, Khouri, and Dobbs, and will dismiss the claims against them with prejudice. Further, the court will dismiss with prejudice the claims against defendants Riggs, Hammack, and Linten as frivolous.

DONE this the 9th day of March, 2005.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge